UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PACIFIC TECH CONSTRUCTION, INC.,

          Plaintiff,

vs.                                           Case No. 3:18-cv-170-J-34JRK

SAUER, INC.,

          Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

### I. Status

This cause is before the Court on Defendant Sauer Incorporated's Dispositive Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. No. 5; "Motion"), filed February 27, 2018. In the Motion, Defendant seeks to dismiss with prejudice the Complaint (Doc. No. 1), filed January 26, 2018, for failure to state a claim upon which relief may be granted. See Motion at 1. Plaintiff opposes the relief sought in the Motion. See Plaintiff, Pacific Tech Construction, Inc.'s, Response to Defendant's Motion to Dismiss (Doc. No. 8; "Response"), filed March 13, 2018. On April 5, 2018, the Honorable Marcia Morales Howard referred the Motion to the undersigned for the issuance of a report and recommendation regarding an appropriate resolution. See Order (Doc. No. 16). For the reasons discussed below, the undersigned recommends that the Motion be granted in part and denied in part.

---

[1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

## II. Background / Complaint

On January 26, 2018, Plaintiff Pacific Tech Construction, Inc. commenced this action by filing a two-count Complaint against Defendant Sauer, Inc. According to the Complaint, Defendant "entered into [a] prime contract [("the Project")] with the United States Army Corps of Engineers [("Government")]." Complaint at 2 ¶ 5. Defendant then entered into two subcontracts with Plaintiff relating to the Project: "Subcontract #01-1586-002N-2001 [('Subcontract #2001')]" and "Subcontract #01-1586-002N-2002 [('Subcontract #2002')]." Id. ¶ 6. Attached to the Complaint is a copy of Subcontract #2001.[2] See Subcontract #2001 Agreement (Doc. No. 1-1).[3] Subcontract #2001 "was for specific labor to be provided by [Plaintiff] for completion [of] furnishing a new roof to the [P]roject," and Subcontract #2002 "was for material to be provided by [Plaintiff] for completion of furnishing a new roof to the [P]roject." Complaint at 2 ¶ 6. Eventually, "disputes over performance and payment arose under both subcontracts, some (not all) of which involved acts or omissions of [the Government]." Id. at 2-3 ¶ 7.

"On April 14, 2014, [Plaintiff] and [Defendant] entered into a Pass-Through Agreement, under which certain specified claims of both parties against [the Government] would be submitted through [Defendant] under the disputes provisions of [Defendant's] prime contract." Id. at 3 ¶ 7. Plaintiff alleges that the Pass-Through Agreement "was limited to specific claims identified in that agreement and were referred to by the parties as the 'Coal Tar Claim.'" Id.

---

[2]   Plaintiff did not attach any other exhibits to the Complaint.

[3]   The Subcontract #2001 Agreement does not contain sequential page numbers. Citations to it follow the pagination assigned by the Court's electronic filing system (CM/ECF).

The Pass-Through Agreement was "expressly executed in connection [to] Subcontract #2001." Id.

According to the Complaint, "[a]t the time of the execution of the Pass-Through Agreement[,] the unpaid balance of Subcontract #2001 was $50,000." Id. ¶ 9. On May 9, 2014, Defendant "sent to [Plaintiff] proposed Change Order 02, on Subcontract #2001, for a deductive change in the amount of $29,305.00 for [Defendant's] version of the net amount of the Sauer Backcharges." Id. ¶ 10. Plaintiff refused to sign the change order. Id. If the change order had been accepted, it would have left a balance of $20,694.00 on Subcontract #2001. Id.

On August 19, 2014, Plaintiff, Defendant, and the Government settled the Coal Tar Claim. Id. ¶ 12. But disputes remained between Plaintiff and Defendant over the balance of Subcontract #2001. Id. at 4 ¶ 15. Because of this, Defendant issued Change Order 08 on Subcontract #2002 "to add to Subcontract #2002 [Plaintiff's] share of the Coal Tar Claim settlement amount plus its share of interest . . . because [Plaintiff] was willing to give a final release on Subcontract #2002, which did not have outstanding backcharges [or] a balance of subcontract in dispute." Id. According to Plaintiff, "[t]he Pass-Through Agreement provided for payment of the Coal Tar Claim on Subcontract #2001, so [Defendant] was not following that [a]greement when it issued Change Order 08." Id. ¶ 16. The parties nonetheless executed Change Order 08, and Defendant paid Plaintiff on Change Order 08 to Subcontract #2002. Id. Defendant, however, "continued . . . to refuse to pay the balance owed to [Plaintiff] under Subcontract #2001." Id. ¶ 17.

Thereafter, Plaintiff issued "Partial Pay Application 013 for a payment of $20,694.00, the portion of the balance of Subcontract #2001 that [Defendant] did not dispute . . . ." Id. ¶ 19.

Partial Pay Application 013 "showed a retention of $29,306.00 (the amount of the unexecuted disputed Change Order 02)." Id. at 4-5 ¶ 19. "On the same day, [Defendant] then unilaterally marked up Partial Pay Application 013 to add the deductive Change Order 02 of $29,305.00 and changed the retention to $0 so that [the] pay application would show[ ] a zero balance on Subcontract #2001." Id. at 5 ¶ 20. According to Plaintiff, Defendant did so in an "attempt[ ] to change the partial pay application to one that would be a final pay request, without consent of [Plaintiff]." Id.

Plaintiff alleges that "[n]either the $20,694.00 nor the 29,305.00 nor any amount has been paid to date, leaving a balance owed on Subcontract #2001 of $50,000[.00]." Id. ¶ 21. Aside from the balance owed under Subcontract #2001, "there remained a number of other unresolved charges . . . between [P]laintiff] and [Defendant] under Subcontract #2001." Id. ¶ 22; see id. at 5-6 ¶ 23. According to the Complaint, Defendant owes Plaintiff a total of $233,897.43 (the $50,000.00 balance on Subcontract #2001 and $183,897.43 in backcharges). See id. at 5-6 ¶ 23.

The two counts are as follows: "breach of contract (Subcontract #2001)" (count I), and "alternative claim in quantum meruit, unjust enrichment and/or quantum valebant" (count II). Id. at 6, 7 (emphasis and capitalization omitted). Plaintiff seeks $233,897.43 in damages under both counts. Id.

### III. Arguments of the Parties

Defendant moves to dismiss the Complaint on three grounds. First, Defendant asserts the Pass-Through Agreement contains a Release that "clearly and unambiguously bars Plaintiff's claims." Motion at 8. Defendant contends that "[s]ince the [Release] language is unambiguous, there is no need to resort to parole evidence or otherwise examine the intention

of the parties." Id. (citation omitted). Defendant attached the Pass-Through Agreement (Doc. No. 5-2) to the Motion.[4] Second, Defendant argues that Count II is due to be dismissed because a "quasi-contract claim exists only where there is no valid, express contract on the same subject matter and because Plaintiff did not satisfy the Twombly pleading standard to plead alternative relief . . . ." Id. at 11; see Bell Atl. Corp v. Twombly, 550 U.S. 544 (2007). According to Defendant, "Plaintiff does not dispute the validity of the contract and agrees that an express contract exists." Motion at 10. Third, Defendant asserts that Count II should be dismissed because "the statute of limitations provides an absolute bar to Plaintiff's quasi-contract claims." Id. at 11.

Responding, Plaintiff argues that the "Complaint is sufficient for breach of contract between the parties, is plausible, and alleges enough to raise a right to relief." Response at 6. Plaintiff contends that the Release does not apply to the claims in this case because "the plain language of the Pass-Through Agreement makes quite clear" that the parties intended the Pass-Through Agreement to apply only to claims against the Government related to the "use of coal tar products in the existing roof." Id. at 6-7. Plaintiff also asserts that the parties' conduct "shows the existence at the very least of a latent ambiguity" as to whether the Release applies to the claims Plaintiff asserts in the Complaint. Id. at 10. Plaintiff does not address Defendant's second and third arguments regarding Count II, but rather argues that "the Court should not dismiss Plaintiff's claims without allowing Plaintiff the opportunity to amend its original complaint." Id. On March 14, 2018, the Court entered an Order (Doc. No. 9) denying Plaintiff's request in the Response for leave to amend the Complaint in the event

---

[4] Defendant also attached the Subcontract #2002 Agreement (Doc. No. 5-2) and a Final Waiver and Lien Release (Doc. No. 5-3) that was executed in connection with Subcontract #2002. These documents and the Pass-Through Agreement are not attached to the Complaint.

the Court finds that its allegations are inadequate. Thus, the undersigned does not consider this request.

The undersigned addresses below whether the Release bars Plaintiff's claims (Defendant's first argument) and whether the quasi-contract claims in Count II should be dismissed due to the existence of an express contract (Defendant's second argument). Concluding that Count I should stand, but that the claims asserted in Count II are due to be dismissed, the undersigned does not address whether the statute of limitations bars the claims in Count II (Defendants' third argument).

## IV. Legal Framework/Discussion

A pleading must contain, among other things, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought, which may include relief in the alternative or different types of relief. Fed. R. Civ. P. 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. Id. (quotation and citation omitted). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683-84 (11th Cir. 2001) (internal quotation and citation omitted). A plaintiff's factual allegations, even though taken as true and in the light most favorable to plaintiff, must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 570; see also Harper v. Lawrence Cnty., Ala.,

592 F.3d 1227, 1233 (11th Cir. 2010) (quotation and citation omitted); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

In reviewing and deciding a motion to dismiss premised on Rule 12(b)(6), "the court limits its consideration to the pleadings and exhibits attached thereto." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long City, 999 F.2d 1508, 1510 (11th Cir. 1993)); see also Contour Spa at the Hard Rock v. Seminole Tribe of Fla., 692 F.3d 1200, 1201 (11th Cir. 2012) (in reviewing an order on a motion to dismiss, stating that "[w]e take as true the facts alleged in [the] complaint and attached exhibits"). "If . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). When treating a motion to dismiss as a motion for summary judgment, the court must first give the parties ten days to submit "any relevant evidence and arguments in support or opposition to the merits." Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga., 708 F.3d 1243, 1252 n.13 (11th Cir. 2013) (citing Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A., 104 F.3d 1256, 1266 n.11 (11th Cir. 1997)); see also Fed. R. Civ. P. 12(d) (stating that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion").

A court, however, may consider a document attached to a motion to dismiss without converting the motion to one for summary judgement "if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002); see also Brooks v. Blue Cross & Blue Shield of Fla., 116 F.3d 1364, 1369 (11th Cir. 1997). A document is "central" to a plaintiff's claim when it is "at the very heart of the plaintiff's claim." Int'l Bhd. of Teamsters v. Amerijet Int'l, Inc., 932 F. Supp. 2d 1336, 1344 (S.D. Fla. 2013). In determining centrality, courts have also considered whether "the plaintiff would

unquestionably have to offer a copy of [the document] in order to prove [its] case." McCanna v. Eagle, No. 2:08-cv-421-FtM-34SPC, 2009 WL 1510159, at *2 (M.D. Fla. May 5, 2009) (unpublished) (citing Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1285 (11th Cir. 2007)); see also Legacy Entm't Grp., LLC v. Endemol USA Inc., No. 3:15-cv-0252-J-20PDB, 2015 WL 12838795, at *3 (M.D. Fla. Oct. 1, 2015) (unpublished) (recognizing that "[f]or the documents to be considered central, it must be 'unquestionable' at this stage that [the p]laintiff would have to offer these documents in order to prove its case" (citation omitted)). Additionally, a document is "undisputed" if "the authenticity of the document is not challenged." Horsley, 304 F.3d at 1134.

Here, the undersigned considers only the Complaint and the exhibits attached thereto. The undersigned does not consider the Pass-Through Agreement as part of the pleadings because it is not attached to the Complaint and it is not central to Plaintiff's claim.[5] Plaintiff's claims are based on damages it claims it is owed under Subcontract #2001. Specifically, Plaintiff's Complaint alleges that Defendant breached Subcontract #2001 and, alternatively, that Defendant was unjustly enriched as a result of its failure to pay Plaintiff the amount owed to it under Subcontract #2001. See Complaint at 6-7. The Pass-Through Agreement is an agreement entered into between Plaintiff and Defendant under which they agreed that Plaintiff's claims against the Government would be submitted through Defendant. See id. at 3 ¶ 7. Plaintiff's claims in this action do not appear to involve the Pass-Through Agreement; indeed, Plaintiff alleges that it was paid its share of the Coal Tar Claim settlement amount pursuant to the Pass-Through Agreement. See id. at 4 ¶¶ 15-16.

---

[5] The undersigned does not address whether Subcontract #2002 and the Final Waiver and Lien Release (which, as noted above, were also attached to the Motion) are central to Plaintiff's claims as these documents are not necessary to resolve the matter at issue.

Although Plaintiff refers to the Pass-Through Agreement in the Complaint, the undersigned cannot find that it is at the very heart of Plaintiff's claim or that it is unquestionable at this stage that Plaintiff would have to offer that agreement to prove its case. See Int'l Bhd. of Teamsters, 932 F. Supp. 2d at 1344; Legacy Entm't Grp., LLC, 2015 WL 12838795, at *3. Thus, while the Pass-Through Agreement is central to a potential affirmative defense, it is not central to Plaintiff's claim. See Lockwood v. Beasley, 211 F. App'x 873, 877 (11th Cir. 2006) (finding "check and its release language [did] not need to be offered by [the plaintiff] in order to prove his case; they [were] relevant to the defendants' affirmative defense"); Douglas v. Bayview Loan Servicing, LLC, No. CA 11-00495-KD-C, 2012 WL 345364, at *4 (S.D. Ala. Jan. 13, 2012) (unpublished) (declining to consider release under motion to dismiss after finding that release was central to defendant's affirmative defense, but not central to plaintiff's claim), report and recommendation adopted, No. CA 11-00495-KD-C, 2012 WL 345363 (S.D. Ala. Feb. 1, 2012) (unpublished).[6] Accordingly, the undersigned does not consider the Pass-Through Agreement in ruling on the Motion.

The undersigned has considered whether to convert the Motion to one for summary judgment, see Rule 12(d), but declines to do so at this stage of the proceedings. As noted above, Plaintiff argues that the parties' conduct after the execution of the Pass-Through Agreement shows the existence of a latent ambiguity as to whether the claims asserted by

---

[6] Further, because the issue of whether there was a release is an affirmative defense and the existence of the Release does not appear on the face of the Complaint, it is improper to consider this issue on a motion to dismiss. See Quiller v. Barclays Am./Credit, Inc., 727 F.2d 1067, 1069 (11th Cir. 1984) (stating that "the existence of an affirmative defense will not support a motion to dismiss" unless the complaint's "own allegations indicate the existence of an affirmative defense," and "the defense clearly appears on the face of the complaint"), on reh'g, 764 F.2d 1400 (11th Cir. 1985); Perkins ex rel Estate of Perkins v. Ottershaw Investments Ltd., No. 04-22869-CIV, 2005 WL 3273747, at *3 (S.D. Fla. Sept. 30, 2005) (unpublished) (denying motion to dismiss to the extent it relied on a release, finding that "the issue of whether there was a release is an affirmative defense which cannot be determined from the face of the complaint and therefore, it is not appropriate . . . to consider this issue on a motion to dismiss").

Plaintiff in the Complaint are barred by the Release. Response at 7-10. Plaintiff asserts that under Oklahoma law,[7] a latent ambiguity exists "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among two or more possible meanings." Id. at 9 (quoting Hensley v. State Farm Fire & Cas. Co., 398 P.3d 11, 23 (Okla. 2017)).

Given the early posture of this case and the factual nature of Plaintiff's arguments with regard to the Release, the undersigned finds that converting the Motion into one for summary judgment would be prejudicial to Plaintiff. Plaintiff may not be able to present sufficient evidence to oppose a motion for summary judgment since an adequate factual record has not yet been developed.[8] See Vining v. Runyon, 99 F.3d 1056, 1058 (11th Cir. 1996) (recognizing that "[a] premature decision on summary judgment impermissibly deprives the plaintiffs of their right to utilize the discovery process to discover the facts necessary to justify their opposition to the motion"); Snook v. Trust Co. of Ga. Bank of Savannah, N.A., 859 F.2d 865, 870 (11th Cir. 1988) (observing that the Eleventh Circuit "has often noted that summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery"); Kelsey v. Withers, 718 F. App'x 817, 821 (11th Cir. 2017). Thus, the undersigned finds that "it would be inappropriate to perform such a conversion because the parties are ill-equipped to present all evidence that would be required for a proper Rule 56 review." Int'l Ship Repair & Marine Servs., Inc. v. Estate of Morales-Montalvo, No. 8:08-cv-1617-T-23EAJ, 2009 WL 36151, at *2 (M.D. Fla. Jan. 6, 2009) (unpublished); see also 701 NPB Assocs v.

---

[7] Plaintiff relies on Oklahoma law because the Pass-Through Agreement contains a choice-of-law provision providing that Oklahoma law governs the construction and interpretation of the agreement. See Response at 9; Pass-Through Agreement at 5 ¶ 11.

[8] It is likely the parties have not conducted much discovery. Defendant filed the Motion about a month after the Complaint was filed, and the parties have until January 28, 2019 to complete discovery. See Case Management and Scheduling Order and Referral to Mediation (Doc. No. 13), entered April 4, 2018, at 1.

Fed. Deposit Ins. Corp., 779 F. Supp. 1336, 1338 n.1 (S.D. Fla.1991) (declining to consider extraneous evidence based on determination "that it is inappropriate at this stage of the proceedings to convert [the d]efendant's motion to dismiss into a motion for summary judgment").[9] Based on the foregoing, the undersigned does not convert the Motion into one for summary judgment and finds that the Motion is due to be denied to the extent it seeks dismissal of Plaintiff's claims on the grounds that they are barred by the Release.

As noted above, Defendant also seeks to dismiss the quasi-contract claims of unjust enrichment, quantum meruit, "and/or" quantum valebant asserted in Count II of the Complaint. Complaint at 7 (capitalization and emphasis omitted); see Motion at 9-11. Under Oklahoma law,[10] quasi-contract claims are equitable, and therefore, not available if the plaintiff has an adequate remedy at law. Krug v. Helmerich & Payne, Inc., 320 P.3d 1012, 1022, as corrected (Okla. 2014). "Although Rule 8 does permit alternative and inconsistent pleading, see Rule 8(d)(2)-(3), '[u]njust enrichment can only be pleaded in the alternative to a breach of contract claim where one of the parties asserts that the contract governing the dispute is invalid.'"

---

[9] Once the parties have had an adequate opportunity for discovery, Defendant may raise the issue of the Release in a properly supported motion for summary judgment.

[10] This case is before the Court on its diversity jurisdiction. See Complaint at 2 ¶ 3. Thus, the undersigned applies the conflict of law rules of the forum state, Florida. See Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996)."Generally, Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So. 2d 306, 311 (Fla. 2000) (citation omitted). Here, Subcontract #2001 contains a choice-of-law provision stating that Oklahoma law governs the construction of the subcontract. See Subcontract #2001 Agreement at 11 ¶ 17 (stating that the subcontract "shall be construed with the laws of the state in which the Project is located"); id. at 1 ¶ 1 (indicating the Project is located in Oklahoma). Defendant argues that Oklahoma law governs the quasi-contract claims asserted in Count II because they are based on Subcontract #2001. See Motion at 9 n.9 (citing Innovative Strategic Commc'ns, LLC v. Viropharma, Inc., No. 8:11-cv-1838-T-33TBM, 2012 WL 3156587, at *3 (M.D. Fla. Aug. 3, 2012) (unpublished) (applying agreement's choice-of-law provision in evaluating quasi-contract claims based on agreement)). Plaintiff does not dispute that Oklahoma law applies, or that application of Oklahoma law would violate Florida public policy, as Plaintiff does not address Defendant's arguments regarding Count II. See generally Response. Therefore, for purposes of this Motion, Oklahoma substantive law governs the evaluation of the quasi-contract claims, and federal law governs procedural issues. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996) (stating that "[u]nder the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law"); Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc., No. 3:16-cv-186-J-34JRK, 2018 WL 905752, at *12 (M.D. Fla. Feb. 15, 2018) (quoting Degutis v. Fin. Freedom, LLC, 978 F. Supp. 2d 1243, 1265 (M.D. Fla. 2013) (alteration in original)); see also Am. Honda Motor Co. v. Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (finding the defendant failed to state a claim for breach of quasi-contract because the "amended counterclaim [did] not suggest that an adequate legal remedy [was] unavailable to the [d]efendants").

Here, Plaintiff and Defendant do not assert that Subcontract #2001 is invalid. Indeed, Plaintiff attached the Subcontract #2001 Agreement to the Complaint. Further, Plaintiff's claims for equitable relief do not fall outside the scope of Subcontract #2001 as they are premised on benefits conferred on Defendant pursuant to Subcontract #2001. See Complaint at 5 ¶¶ 21-22 (alleging Defendant owes Plaintiff $50,000 under Subcontract #2001 as well as payment for "a number of other unresolved charges . . . under Subcontract #2001"); see CEMEX, 2018 WL 905752, at *12 (noting the counterplaintiff's "claim for unjust enrichment does not exist outside of the contract, as the claim is premised on [the counterplaintiff] obtaining profits from sales which under the terms of the [agreement], it was not permitted to make"). Notably, Plaintiff seeks the same damages under Count I and Count II. See Complaint at 6-7; id. at 5-6 ¶¶ 21-23 (outlining damages). Accordingly, Count II cannot stand.

## V. Conclusion

Based on the foregoing, the undersigned finds that the Motion is due to be granted to the extent that the quasi-contract claims in Count II of the Complaint should be dismissed. The Motion should be otherwise denied. The undersigned need not address the third issue raised

in the Motion because the claims asserted in Count II are due to be dismissed. Accordingly, it is

**RECOMMENDED THAT**:

1. Defendant Sauer Incorporated's Dispositive Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (Doc. No. 5) be **GRANTED in part** and **DENIED in part**.

2. The Motion be **GRANTED** to the extent that Count II be dismissed.

3. The Motion otherwise be **DENIED**.

4. Defendant be ordered to answer the Complaint (Doc. No. 1) within **fourteen (14) days** of the entry of an Order on the Motion.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on July 16, 2018.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Counsel of Record